FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2017 MAY 23 PM 3:53

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

CASE NO.: 3:17-cv-586-J-34JRK

APR ENERGY, LLC, a Florida limited liability company,

Plaintiff,

vs.

REPUBLIC OF ANGOLA, a foreign state; MINISTÉRIO DAS FINANÇAS, an agency or instrumentality of the Republic of Angola; MINISTÉRIO DA ENERGIA E ÁGUAS, an agency or instrumentality of the Republic of Angola; and REDE NACIONAL DE TRANSPORTE DE ELECTRICIDADE-EP, an agency or instrumentality of the Republic of Angola,

Defendants.
_______________________________/

## COMPLAINT

Plaintiff, APR Energy, LLC ("APR"), sues defendants the Republic of Angola ("Angola"), the Ministério das Finanças ("MinFin"), the Ministério da Energia e Águas ("MINEA"), and the Rede Nacional de Transporte de Electricidade-EP ("RNT") (collectively referred to as the "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* ("FSIA") brought by APR against Angola and several Angolan governmental agencies or instrumentalities. The purpose of this action is to recover substantial amounts due to APR by Defendants arising out of certain contracts and extensions for the purpose of generating

electricity for the citizens and residents of Angola, as well as the related settlement agreements in which Defendants undertook, and failed, to pay APR pursuant to agreed upon and scheduled payment plans. Defendants have materially and repeatedly defaulted on their obligations to compensate APR for the power generation services it provided, currently in an amount in excess of US$44,000,000.00, plus interest. In addition to ignoring APR's demands for payment, Defendants have made material misrepresentations regarding the status of certain payments to induce APR to continue providing services even though the contracts had terminated and the Defendants had no intention of delivering said payments. Based on the repeated promises to pay, repeated failures to comply with those promises and the false representations regarding payments that allegedly had been made, but which were never delivered to APR, APR seeks this Court's intervention to make APR whole.

## **THE PARTIES**

2. Plaintiff, APR, is a Florida limited liability company with its principal place of business in Jacksonville, Florida.

3. Defendant, Angola, is a "foreign state" within the meaning of 28 U.S.C. § 1603(a).

4. Defendant, MinFin, a ministry of the government of Angola, is an "agency or instrumentality" of Angola pursuant to 28 U.S.C. § 1603(b) because it is (1) a separate legal person, (2) an organ or political subdivision of the foreign state, and (3) not a citizen of any state of the United States as set forth under 28 U.S.C. § 1332(c) and (3). Accordingly, MinFin is a "foreign state" pursuant to 28 U.S.C. § 1603(a), which, by definition, includes an "agency or instrumentality of a foreign state" as defined under 28 U.S.C. § 1603(b).

5. Defendant, MINEA, a ministry of the government of Angola, is an "agency or instrumentality" of Angola pursuant to 28 U.S.C. § 1603(b) because it is (1) a separate legal person, (2) an organ or political subdivision of the foreign state, and (3) not a citizen of any state of the United States as set forth under 28 U.S.C. § 1332(c) and (3). Accordingly, MINEA is a "foreign state" pursuant to 28 U.S.C. § 1603(a), which, by definition, includes an "agency or instrumentality of a foreign state" as defined under 28 U.S.C. § 1603(b).

6. Defendant, RNT, a subsidiary entity of a ministry of the government of Angola, is an "agency or instrumentality" of Angola pursuant to 28 U.S.C. § 1603(b) because it is (1) a separate legal person, (2) an organ or political subdivision of the foreign state, and (3) not a citizen of any state of the United States as set forth under 28 U.S.C. § 1332(c) and (3). Accordingly, RNT is a "foreign state" pursuant to 28 U.S.C. § 1603(a), which includes an "agency or instrumentality of a foreign state" as defined under 28 U.S.C. § 1603(b).

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1330(a), which provides that "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state" within the meaning of 28 U.S.C. § 1603(a).

8. Accordingly, this Court has jurisdiction over Angola pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1603(a).

9. This Court has jurisdiction over MinFin pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1603(b).

10. This Court has jurisdiction over MINEA pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1603(b).

11. This Court has jurisdiction over RNT pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1603(b).

12. Defendants are not immune from the jurisdiction of this Court in this case under 28 U.S.C. § 1604 for the following reasons:

a. Pursuant to 28 U.S.C. § 1605(a)(1), Angola, MINEA, and RNT have explicitly waived immunity;

b. Pursuant to 28 U.S.C. § 1605(a)(2), Angola, MINEA and RNT were obligated to perform an act in the United States in connection with a commercial activity elsewhere; and

c. Also pursuant to 28 U.S.C. § 1605(a)(2), all Defendants have taken acts outside the territory of the United States in connection with a commercial activity, and said acts have caused a direct effect in the United States.

13. Angola, MINEA and RNT have explicitly waived immunity from the jurisdiction of this Court for purposes of 28 U.S.C. § 1605(a)(1) pursuant to two contracts entered into with APR: (1) the "Rental Agreement of Energy Power (40MW) in the Morro Bento Area between Ministry of Energy and Water and APR Energy LLC" (the "Morro Bento Agreement"), and (2) the "Contract for the Sale and Purchase of Electric Power between Empresa Nacional de Electricidade—E.P. and APR Energy, LLC" for the location at Rocha Pinto in Luanda, Angola (the "Rocha Pinto Agreement"). A true and correct copy of the Morro Bento Agreement in Portuguese with a certified English translation is attached as **Exhibit A**, and a true and correct copy of the Rocha Pinto Agreement in Portuguese with a certified English translation is attached as **Exhibit B**.

14. Specifically, the final clause of the dispute resolution provisions of both the Morro Bento Agreement and the Rocha Pinto Agreement provides as follows:

> Notwithstanding anything in the foregoing to the contrary, the parties agree that either Party shall have the right to file with any court of competent jurisdiction, whether in law or in equity, a suit, claim or reintegration action or claim or any other action seeking a similar remedy, and to prosecute such suit, claim or action as necessary to recover possession of any Seller Equipment, or other chattel in which the Seller holds or claims title or a leasehold or other income, which has been taken or detained by the Client or any third party. The filing and prosecution of any such suit or action in a court of law or equity shall not be deemed incompatible with, or a waiver of, this agreement to arbitrate.
>
> Morro Bento Agreement § 26(7); Rocha Pinto Agreement § 27(7).

15. Similarly, the Rocha Pinto Agreement contains the following express waiver of immunity in the section entitled "Expropriation; Waiver of Sovereign Immunity":

> To the extent that the Client [Angola] may in any jurisdiction claim for itself or its assets immunity from suits, executions, liens (whether in aid of execution, before ruling or otherwise) or other legal process, the Client hereby agrees not to claim and waives such immunity to the fullest extent permitted by the laws of that jurisdiction, intending in particular, but without limiting the generality of the foregoing, that this waiver shall apply in any proceedings occurring in the Republic of Angola.
>
> Rocha Pinto Agreement § 32(2).

16. Angola, MINEA and RNT are likewise not immune from the jurisdiction of this Court because they were obligated to perform an act in this district (Jacksonville, Florida) pursuant to an ongoing commercial activity elsewhere (in Angola). In particular, Angola, MINEA and RNT contractually agreed and were obligated to make payments to APR in Jacksonville, Florida. In the Addendum No. 1 to the Debt Acknowledgement and Settlement Agreement (the "Addendum"), more fully described herein, RNT affirmed that "[a]ll payments due hereunder shall be due and payable at APR Energy's principal office located at 3600 Port

Jacksonville Parkway, Jacksonville, Florida, U.S.A." A true and correct copy of the Addendum is attached as **Exhibit D**.

17. Moreover, Angola, MINEA and RNT did, in fact, make certain payments to APR in Jacksonville, Florida on multiple occasions, as reflected in banking documents, which evidence the destination of payment was APR's address in Jacksonville, Florida. However, the substantial amount of US$44,546,218.48 is currently due and payable in Jacksonville, Florida and has not been paid.

18. All Defendants are not immune from the jurisdiction of this Court because they undertook acts that caused a direct effect in the United States, specifically as follows:

a. Angola and MinFin agreed and were obligated to make payments to MINEA and RNT to compensate APR for its contractually provided services in Angola, and said payments would have a direct and material effect on APR in the United States;

b. Angola and MinFin represented to APR that they would cause the transfer of funds to MINEA and RNT for purposes of compensating APR for its contractually provided services in Angola, and said promises of payment had a direct and material effect on APR in the United States;

c. Angola and MinFin continuously and systematically failed to make payments to MINEA and RNT, who then failed to compensate APR for its contractually provided power generation services, and said failures had a direct and material effect on APR in the United States; and

d. Angola, MinFin, MINEA, and RNT continuously and systematically failed to make payments to APR for APR's provision of services, and said failures had a direct and material effect on APR in the United States.

19. Supplemental jurisdiction exists over the state law causes of action pursuant to 28 U.S.C. § 1367.

20. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(f)(1), in that a substantial and material part (payment of over $44,000,000.00 in Jacksonville, Florida) of the events or omissions giving rise to the Complaint occurred within this district.

21. Defendants are subject to service of process pursuant to 28 U.S.C. § 1608.

22. APR has suffered damages as a direct result of the acts and omissions by Defendants asserted in this Complaint in excess of US$44,000,000.00.

## GENERAL ALLEGATIONS

### *The Agreements for Power Installation and Services*

23. APR is a company based in Jacksonville, Florida, dedicated to the business of supplying temporary and long-term power to governments and their agencies, utilities, and owners and operators of power plants. APR provides turnkey power generation solutions for public and private projects worldwide by rapidly deploying mobile, large-scale power plants.

24. In 2012, APR and MINEA entered into the Morro Bento Agreement for APR to supply power generation equipment and services to meet urgent power needs of the people in and around Luanda, the capital city of Angola. *See* **Exhibit A**. Pursuant to this agreement, APR installed and operated a 40MW power generating facility, and it also sold the electrical output to MINEA.

25. Immediately upon the entry into force of the Morro Bento Agreement, MINEA agreed to deliver to APR an irrevocable letter of credit in the amount of US$22,178,813.00, which represented the aggregate amount of the fixed rate portions of monthly payments as defined under the agreement. *See id.* § 10(1).

26. The initial term of the Morro Bento Agreement was for twelve months, and the agreement could be extended in six-month increments at the option of the Angolan government and upon the approval of APR. *See id.* § 2(3).

27. On October 28, 2013 MINEA assigned its contract rights in the Morro Bento Agreement to Empresa Nacional de Electricidade, E.P. ("ENE"), which, at that time, was a subsidiary entity of MINEA. The October 28, 2013 agreement also served as an extension of the Morro Bento Agreement.

28. Pursuant to Presidential Decree No. 305/14, on November 20, 2014, ENE ceased to exist, and instead it was replaced by the following three entities: (1) Empresa Pública de Produção de Electricidade (PRODEL-EP) ("PRODEL"), (2) Empresa Nacional de Distribuição de Electricidade (ENDE-EP) ("ENDE"), and (3) RNT. After this separation of entities and activities, RNT became the entity responsible for the generation of power and transport of energy throughout Angola.

29. Upon Presidential Decree No. 305/14, RNT assumed all of ENE's (and previously, MINEA's) contractual rights and obligations under the Morro Bento Agreement.

30. Subsequently, RNT extended the term of the Morro Bento Agreement several times pursuant to extension agreements entered into between the parties.

31. In 2013, APR and ENE entered into the Rocha Pinto Agreement. Like the Morro Bento Agreement, the purpose of the Rocha Pinto Agreement was the supply of power

generation equipment and services to meet the short-term and/or supplemental power requirements of power users in and around Luanda, Angola.

32. The initial term of the Rocha Pinto Agreement was for twelve months, subject to extensions of the agreement in six-month increments at the option of the Angolan government and upon the approval of APR.

33. RNT likewise extended the term of the Rocha Pinto Agreement several times pursuant to extension agreements entered into between the parties.

34. Together, the Morro Bento and Rocha Pinto power plants installed and operated by APR represent more than 10 percent of the electricity supplied in and around Luanda. These plants have served more than one million inhabitants of the Morro Bento and Rocha Pinto areas.

***Acknowledgement of Debt and Continued Failures to Pay***

35. While the Morro Bento and Rocha Pinto Agreements (and their related extensions) were in force, MINEA and RNT constantly remained in arrears of their payment obligations to APR. On several occasions, APR transmitted correspondence to MINEA and RNT to document the payment deficiencies and request the amounts due and owing.

36. As a result, on January 31, 2016, APR and RNT entered into a Debt Acknowledgement and Settlement Agreement (the "Settlement Agreement"), pursuant to which RNT acknowledged that it owed APR a fixed, certain and collectible amount of US$49,423,774.76, along with the projected value of future invoices in the amount of US$14,010,992.82, for a grand total of US$57,896,070.61. RNT agreed to pay this amount to APR in installments by depositing the funds in APR's Bank of America account. A true and correct copy of the Settlement Agreement is attached as **Exhibit C**.

37. Thereafter, Angola, MINEA, and RNT failed in their obligations to timely make payments to APR under the Settlement Agreement.

38. In addition, Angola, MINEA, and RNT failed to continuously make payment under the Morro Bento Agreement (including extensions) and the Rocha Pinto Agreement (including extensions). As a result, the parties entered into the Addendum on December 15, 2016. *See* **Exhibit D**.

39. In the Addendum, RNT acknowledged an additional amount owed under the extended agreements of US$17,309,818.34, plus the projected value of future invoices in the amount of US$4,434,727.28. RNT accepted and undertook to pay those amounts, along with interest, which at that time was in the amount of US$792,020.54, for a total amount owed of US$22,536,566.16, which RNT agreed to pay in installments.

40. In addition to the amounts owed, RNT agreed to deliver to APR an irrevocable letter of credit in the amount of US$12,897,315.78 (the "Letter of Credit").

41. Again, Angola, MINEA, and RNT failed to fulfill their obligations to make payments under the Addendum. Further, RNT failed to deliver to APR the Letter of Credit as promised under the Addendum.

***Payments to APR by Angola***

42. Through the ongoing process of attempting to collect amounts due and owing APR became familiar with the manner in which payments were made by the Angolan government to APR. APR has had substantial communications and course of dealings with officials and agents of several divisions of the government of Angola for purposes of requesting payments due and owing under the various agreements.

43. As previously mentioned, PRODEL, ENDE and RNT are all subsidiaries of MINEA, in addition to other subsidiary entities. One other related entity under MINEA is the Instituto Regulador dos Serviços de Electricidade e de Água ("IRSEA"). IRSEA replaced the Instituto Regulador do Sector Eléctrico ("IRSE") by law dated March 16, 2016.

44. RNT does not have the capital to pay its suppliers and creditors such as APR, nor does MINEA. Rather, throughout the course of dealings between the parties, it was MinFin that funded MINEA for sums due and owing to APR.

45. MinFin is responsible for providing funds to the various entities in MINEA. Generally, ENDE receives the funds from MinFin, and then IRSEA redistributes the funds received among the three entities—ENDE, PRODEL and RNT. MinFin transmits the funds from the Angolan National Bank ("BNA")—a state-owned bank—to ENDE's account at the Banco de Poupança e Crédito ("BPC"), a state-owned commercial bank.

46. In sum, the act of making payments to APR requires actions from several entities within MinFin and MINEA, as well as the transfer of funds from one state-owned bank to another to effectuate payment of APR's invoices for the power generation services provided to the government of Angola.

***Defendants' Repeated Misrepresentations***

47. As discussed above, Defendants repeatedly and consistently failed to (1) make timely payment under the Morro Bento and Rocha Pinto Agreements, (2) make payment pursuant to the schedule set forth in the Settlement Agreement, and (3) adhere to the payment schedule and deliver the irrevocable letter of credit as set forth in the Addendum. These failures damaged APR not only by causing the obvious and substantial financial harm to APR, but also

by creating rifts between APR and its banks and auditors, which are now of the belief that Angola will not fulfill its payment obligations.

48. By March of 2017, save for one payment from RNT of approximately US$89,000 (which the relevant Angolan entities admitted was in error) APR had not received any payment pursuant to the schedules set forth in the Settlement Agreement and Addendum. As a result, APR made several written demands to RNT, with copies to MINEA, MinFin, and BNA—the bank from which MinFin transfers the funds to MINEA. Because of the importance of this matter and the critical nature of the power generation services being provided to the people of Angola, APR also copied the U.S. Ambassador to Angola. APR provided notice that RNT was in material breach of its contracts and that significant sums were past due and that the promised letter of credit had not been provided. APR delivered its demands in writing through its agent in Angola for communications with the relevant governmental entities in Angola, Greentech – Angola Environment Technology, Lda ("Greentech").

49. In early March, Greentech notified APR that both BNA and MINEA had represented to Greentech that payment to APR was planned and would be delivered promptly. Both Greentech and agents of the U.S. Embassy in Angola remained in continuous contact with several officials and offices of the Angolan government regarding the issue of payment to APR given the critical nature of the power generation services being provided.

50. By the middle of March, Greentech notified APR that several individuals from the Angolan government and related banks represented that Angola and BNA had the funds necessary to make the required payments, including delivery of the letter of credit as specified under the Addendum, prior to the end of March. In addition, Greentech had several meetings planed with MinFin, MINEA and the U.S. Embassy to discuss these payment issues.

51. By March 27, 2017, no payment had been made to APR despite repeated representations to the contrary. By this time, APR had notified the Defendants of its plan to turn off the Morro Bento and Rocha Pinto power plants upon the expiration of the related contractual extensions on Friday, March 31, 2017, if the required payments were not made by the deadline. APR, at all times material, acted in good faith and in accordance with the terms of the relevant agreements and extensions with the expectation that the Defendants would meet their payment obligations—obligations that Defendants confirmed and did not dispute.

52. On or about March 31, 2017, representatives of APR and Greentech met with several representatives of the Angolan government banks and the Defendants in a final attempt to secure the undisputed payments due and owing to APR.

53. APR and Greentech first met with an official of BNA, who represented that MinFin's bank—and thus MinFin—had the funds necessary to effectuate payment of the amounts due and owing to APR. However, to transfer the funds to ENDE, BNA required authorization from MinFin, which authorization BNA claimed it had not received.

54. Subsequently, APR and Greentech met with Edson Vaz, the Director of the National Treasury Angola, part of MinFin, to request the transfer of funds and status of payment. Mr. Vaz confirmed that RNT did not have the necessary funds to pay APR, but rather, MinFin had the funds. Mr. Vaz explained that APR's funds would first need to be transferred to ENDE, which is the entity that receives the funds from MinFin and distributes them among ENDE, RNT and PRODEL, for each of the entities to pay their suppliers and creditors.

55. In that meeting, Mr. Vaz represented that he would transfer 6 billion Angolan kwanza (approximately US$36,000,000.00) to satisfy the payments owed at that time to APR.

To do so, Mr. Vaz would initiate the transfer from the MinFin account at BNA to ENDE's account at BPC.

56. In addition, Mr. Vaz placed a telephone call to the president of ENDE to provide notification that MinFin was transmitting 6 billion kwanza for the purpose of making payment to APR. As a result, ENDE was on notice that the 6 billion kwanza were specifically allocated to RNT for making payment to APR. At this point, these funds were represented to be clearly and specifically identified and segregated by the Angolan government for making payment to APR.

57. Later on March 31, 2017, APR and Greentech met with RNT. At that meeting, RNT advised that payment was available from the Angolan government and would be made forthwith to APR. Based on the representations by the Defendants that the funds had been segregated by the Angolan government and would be paid to APR, the Defendants requested that APR extend the contracts for another month. Relying on these representations made by Defendants promising transfer of the funds from MinFin to MINEA for the purpose of making payment to APR, APR, in good faith, agreed (1) not to shut down the Morro Bento and Rocha Pinto plants as scheduled and (2) to extend the agreements for one month, with an expiration of April 30, 2017. These representations by Defendants, which were confirmed by RNT in writing, later proved to be false.

58. Following the March 31 meetings, APR and Greentech remained in frequent contact with the Defendants to obtain the promised payment to APR. Despite Defendants' false representations to the contrary, no payment was made.

59. In response to APR's ongoing inquiries, Mr. Vaz of MinFin had represented to APR and Greentech that he would address a letter to MINEA—and specifically, to ENDE—to

confirm that the payment of 6 billion kwanza was for payment to APR. Mr. Vaz did not write this letter despite promises to do so.

60. On several occasions, Mr. Vaz represented to APR's agent, Greentech, and the U.S. Embassy in Angola that MinFin had in fact transmitted the funds from its bank account at BNA to ENDE's account at BPC for purposes of making payment to APR. When asked to confirm the receipt of funds from MinFin's account at BNA, BPC could not provide the requested confirmation. APR later learned that the Defendants' representations regarding the segregation and transmission of funds were false and were made for the purpose and intent of inducing APR to provide additional power generation services, when in fact Defendants had no intention of making the agreed upon payment.

61. To that end, APR met with the chairman of BPC and the Angolan ambassador in Washington, D.C., on April 20, 2017. At that meeting, APR notified the chairman of BPC of the transfer of funds that was supposed to occur and of the subsequent disappearance of 6 billion kwanza. BPC's chairman represented he was unaware of the transaction to pay APR, but promised to assign someone within the bank to investigate and oversee the process. Despite this representation, when APR later followed up with the chairman of BPC to determine the location or status of the funds, the person assigned with the task of locating the funds did not know where the money had gone.

62. On April 21, 2017, APR's agent Greentech again contacted Mr. Vaz of MinFin by email to request assistance with the payments in accordance with the plan that had been defined weeks prior. Mr. Vaz did not respond.

63. On April 27, 2017, the issue of payment was at a critical point, since the final extension of the agreements was to expire on April 30, 2017. APR's plant manager in Angola

attempted to contact Mr. Vaz requesting payment be made by MinFin to APR as agreed. Mr. Vaz again did not respond.

64. Despite the many false representations made by Defendants that payment was segregated, transmitted, and in the process of delivery to APR, the money never reached APR in Jacksonville, as represented and required. It appears that Angola had the funds to pay APR, but the Defendants never had the intent to make payment. Moreover, it is now clear that the Defendants' representations were false and were made to induce APR to continue providing power generation services to Angola.

***APR's Final Demands***

65. Following the constant efforts of APR, Greentech and the U.S. Embassy in Angola to trace APR's funds, APR engaged the undersigned attorneys to demand payment from Defendants. APR, through the undersigned attorneys, sent a first demand letter to RNT on May 9, 2017 (the "First Demand Letter"), a copy of which was received at RNT's office in Luanda. Greentech delivered the First Demand Letter to RNT. APR also provided a copy of the First Demand Letter to MINEA (through Greentech) and to the U.S. Embassy in Angola. In the First Demand Letter, APR, through its attorneys, demanded payment of the outstanding amount of US$44,546,218.48, within five business days of the date of the letter.

66. RNT responded to APR's First Demand Letter, indicating that it was not able to fulfill its contractual obligations to make payments because of the financial situation of the country, which flatly contradicts their prior representations. Indeed, this response came after multiple representatives of Defendants made assurances to APR that (1) Angola had the money to pay APR, (2) MinFin was transferring the funds from BNA to the BPC bank account for

eventual transfer of the funds to APR, and (3) APR would receive the outstanding funds forthwith.

67. In a final attempt to collect the sums due and owing from Defendants, on May 15, 2016, APR, through its attorneys, transmitted a second demand letter to RNT (the "Second Demand Letter"), with copy to the U.S. Embassy in Angola, MINEA, and ENDE (the sister entity under MINEA that controlled the flow of funds). APR again demanded payment of the outstanding US$44,546,218.48 within 72 hours of receipt of the Second Demand Letter. Not one of the Defendants has responded to APR's Second Demand Letter.

68. All conditions precedent to the bringing of this action either have occurred, have been performed, or otherwise have been waived.

69. APR has retained the undersigned attorneys to represent it in the prosecution of this action, and is obligated to pay such attorneys their reasonable fees and expenses.

**COUNT I – BREACH OF CONTRACT**
***Alleged Against Angola, MINEA, and RNT***

70. APR reaffirms and re-alleges paragraphs 1 through 69 above with the same force and effect as if fully set forth herein.

71. Pursuant to the Morro Bento Agreement and the Rocha Pinto Agreement, APR agreed to install and operate power generation facilities in Angola for the benefit of the people of Angola. *See* **Exhibits A and B**.

72. Angola, MINEA, and RNT in turn agreed to make timely and sufficient payment pursuant to the terms of the Morro Bento Agreement and Rocha Pinto Agreement.

73. Angola, MINEA, and RNT materially breached their obligations to make timely payment and have acknowledged their multiple breaches of the Morro Bento Agreement and the Rocha Pinto Agreement. Further, Angola, MINEA, and RNT have materially breached the terms

of the Settlement Agreement and the Addendum, pursuant to which they acknowledged monies owed to APR and undertook to compensate APR according to a payment plan. *See* **Exhibits C and D**.

74. MINEA and RNT additionally breached their obligation to deliver an irrevocable letter of credit to APR in the amount of US$12,897,315.78.

75. As a result of these breaches, APR has suffered damages in the amount of US$44,546,218.48, plus interest, for sums due and owing under the agreements, additional home office overhead and demobilization expense, travel and lodging in connection with the extension and the attempts to obtain payment, extraordinary audit costs, and court costs and attorney's fees.

**WHEREFORE**, APR demands judgment for damages against Angola, MINEA, and RNT, for compensatory damages, prejudgment interest, attorney's fees, costs, and all such other relief this Court deems just, fair, and equitable.

## COUNT II – ACCOUNT STATED
***Alleged Against All Defendants***

76. APR reaffirms and re-alleges paragraphs 1 through 69 above with the same force and effect as if fully set forth herein.

77. Prior to the institution of this action, APR entered into the Morro Bento Agreement and Rocha Pinto Agreement, pursuant to which Angola, MINEA and RNT agreed to make payment to APR for the services and electrical output rendered.

78. APR provided timely notice of the ongoing payment deficiencies for amounts due and owing.

79. Moreover, after APR did not receive payment for the services and output rendered, APR and RNT entered into the Settlement Agreement and the later Addendum, memorializing a schedule by which APR was to receive the outstanding amounts relative to the

Morro Bento Agreement and related extensions, as well as the Rocha Pinto Agreement and related extensions.

80. APR and Defendants agreed upon the balance due, and the Defendants explicitly promised to pay the amounts set forth in these statements.

81. Defendants expressly and implicitly promised to pay APR the amounts set forth in the statements.

82. Defendants agreed and had an obligation to provide the funds to the relevant entities in MINEA, by transferring the funds to the BPC account, in order to make payment to APR in the amount of US$44,546,218.48.

83. On or about May 9, 2017, APR's attorneys sent a demand letter to RNT and MINEA providing notice of the outstanding debt, following which not one of Defendants objected to the debt.

84. On or about May 15, 2016, APR's attorneys sent a second and final demand letter providing notice of the amounts due and owing and requiring payment. Again, none of the Defendants objected to the debt.

85. Defendants have not paid APR all of the amounts owed under the account.

**WHEREFORE**, APR demands judgment for damages against all Defendants, compensatory damages, prejudgment interest, costs, and all such other relief this Court deems just, fair, and equitable.

## COUNT III – UNJUST ENRICHMENT
***Alleged Against all Defendants***

86. APR reaffirms and re-alleges paragraphs 1 through 69 above with the same force and effect as if fully set forth herein.

87. Defendants wrongfully gained over US$44,000,000.00 worth of power generation output and services without providing compensation to APR for said services and output. Defendants would be unjustly enriched should they be allowed to withhold payment to APR.

88. APR conferred a benefit upon Defendants by providing power generation output and services for the people of Angola.

89. Defendants appreciated the benefit that APR conferred upon them and upon the people of Angola, accepting the power generation output and services without providing compensation for the output and services.

90. It would be inequitable for Defendants to retain the benefit conferred—the substantial amounts of power generation output and services—without paying the value thereof.

91. APR has no adequate remedy at law.

92. As a result of the foregoing, APR has suffered damages.

**WHEREFORE**, APR demands judgment for damages against all Defendants, compensatory damages, prejudgment interest, costs, and all such other relief this Court deems just, fair, and equitable.

## COUNT IV – MISREPRESENTATION
***Alleged Against All Defendants***

93. APR reaffirms and re-alleges paragraphs 1 through 69 above with the same force and effect as if fully set forth herein.

94. For the purpose of inducing APR to continue to provide electric power generation services, and with the intent to deceive APR, Angola, MinFin, MINEA and RNT employed a scheme to mislead APR, as a part of which these Defendants participated in the making of material misrepresentation of facts and omission of material facts.

95. These Defendants falsely represented to APR that funds had been segregated and were available to pay APR, that these funds were in the process of being transmitted to APR, and that APR would receive payment sufficient to satisfy the amounts due and owing to APR pursuant to the Morro Bento Agreement, the Rocha Pinto Agreement, the Settlement Agreement and the Addendum. However, in reality, these Defendants simply caused APR to commit to provide additional electric power generation services, while keeping APR in the dark about the true intentions not to pay APR.

96. These Defendants made the following false statements (or omissions) of material fact:

a. MinFin falsely represented it had transferred 6 billion kwanza (approximately US$36,000,000.00) of local currency to MINEA's bank account at BPC, which money was specifically allocated for payment to APR in Jacksonville, Florida.

b. MinFin falsely represented that the money would flow from MinFin's bank account with BNA to BPC, which held the relevant account for MINEA.

c. MinFin falsely represented to ENDE that 6 billion kwanzas would flow from MinFin's account with BNA to the BPC account, and that those funds were specifically set aside and allocated for RNT to pay APR.

d. MinFin falsely represented it would address a letter to MINEA to advise of the transfer of funds for payment to APR, but never did so.

e. MINEA and RNT made multiple false representations that payment to APR would occur in the month of April, but that payment never did occur.

f. In response to the First Demand Letter, RNT falsely indicated to APR that Angola was not in a financial position to pay APR for the amounts due and owing, which flatly contradicts all of the prior representations made by Defendants concerning the funds that had been segregated and allocated for payment to APR.

g. At no time prior to RNT's letter response to APR's First Demand Letter did any of Defendants state that Angola did not have the financial ability to pay APR the amounts due and owing. In fact, they represented to the contrary.

97. The Defendants knew these representations were false when made and were made with the present intent that they would not make payment to APR as was represented.

98. Defendants knew that APR would reasonably rely upon these false statements and representations.

99. Defendants intended that APR would rely on these false statements and representations for the purpose of inducing APR to continue to provide services. APR did, in fact, reasonably rely on these false statements to its detriment.

100. APR was unaware of the material misrepresentations and omissions made by these Defendants. In justifiable reliance on the misrepresentations, and without knowing the true facts, APR was induced to continue to supply power generation services to Angola. Had APR known the true facts, APR would not have continued to provide these services.

101. The material misrepresentations and omissions of Defendants were the direct legal cause of loss to APR.

102. As a result of the Defendants' misrepresentation, APR has suffered damages in the amount of US$44,546,218.48, plus interest, for sums due and owing under the agreements, additional home office overhead and demobilization expense, travel and lodging in connection with the extension and the attempts to obtain payment, extraordinary audit costs, and court costs and attorney's fees.

**WHEREFORE**, APR demands judgment for damages against all Defendants, for compensatory damages, prejudgment interest, costs, and all such other relief this Court deems just, fair, and equitable.

Dated: May 23, 2017

Respectfully submitted,

By: */s/ Harold E. Patricoff*
Harold E. Patricoff (FBN 508357)
hpatricoff@shutts.com
Peter H. Levitt (FBN 650978)
plevitt@shutts.com
H. Timothy Gillis (FBN 133876)
tgillis@shutts.com
Kristin Drecktrah Paz (FBN 91026)
kpaz@shutts.com
SHUTTS & BOWEN LLP
200 S. Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Tel.: (305) 358-6300
Fax: (305) 381-9982
*Attorneys for Plaintiff, APR Energy, LLC*

MIADOCS 14838214 3